UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS T. SMITH III,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>　　　　　Defendant. | CASE NO. CV 05-05922-PJW<br><br>MEMORANDUM OPINION AND ORDER |

I.

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of the decision by Defendant Social Security Administration ("Agency") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. Alternatively, he asks the Court to remand the case to the Agency for further proceedings. After reviewing the record and for the reasons discussed below, the Agency's decision is AFFIRMED and the case is DISMISSED.

## II.

## BACKGROUND

A.  <u>Plaintiff's Personal History and Work History</u>

Plaintiff was born in 1974, and was 31 years old at the time of the administrative hearing in this case. (AR 54, 199.) He has a twelfth-grade education, but did not graduate from high school. (AR 201.) After leaving high school early, he received vocational training as a certified nurse's assistant. (AR 200-201.) Thereafter, Plaintiff worked as a nurse's assistant in hospitals and private homes. (AR 209.) Plaintiff's last date of employment was July 28, 2002. (AR 200.) He claims that he lost his job due to his inability to focus appropriately in managing his duties as a nurse's assistant. (AR 201-02.)

B.  <u>Plaintiff's Medical History and Treatment</u>

When he was 18, Plaintiff was taken to an emergency room after his mother became concerned that he was not focused. (AR 73, 215.) Plaintiff was diagnosed with bipolar mood disorder and has received psychiatric treatment for it since 1995. (AR 73, 117, 123-125, 155.) He has been prescribed Buspar, Depakote, and Zyprexa to treat his condition. (AR 91, 127.) In addition, every three weeks, Plaintiff sees a psychiatrist for treatment, medication, and, occasionally, lab tests. (AR 205.)

Over the course of his treatment, Plaintiff has often informed his psychiatrist that he was doing well. (AR 110, 127, 136.) Treatment notes demonstrate Plaintiff responded well to his medication. (AR 127-28, 135, 144, 152.) Since 2000, Plaintiff's condition appears to have stabilized and, in fact, is in remission. (AR 120, 124-25, 127-30, 132, 135-136, 140, 145, 147, 149.) By August

and September 2003, Plaintiff told his psychiatrist that he was "doing very well," reported no side-effects, and wanted to remain on the same medication because it was working "real good." (AR 127-28.) Final treatment notes from December 2003 and January 2004 state that Plaintiff was "overall stable." (AR 124.)

C.   The Administrative Proceedings

Plaintiff filed an application for DIB and SSI on December 30, 2003. (AR 54-56, 177-81.) The application was denied initially and upon reconsideration. (AR 22-26.) Thereafter, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was granted. (AR 33-37.) On January 14, 2005, the ALJ held a hearing at which Plaintiff, his mother, and a vocational expert testified. (AR 196.)

   1.   Plaintiff's Testimony

Plaintiff testified that his trouble focusing first became evident sometime in 1995 or 1996, while working as a nurse's assistant. (AR 203.) Plaintiff explained that he had too many things to do on the job and that he was not able to complete his assigned tasks. (AR 203.) He found himself becoming so frustrated that he felt as though he was experiencing a mental breakdown. (AR 203.) Plaintiff described his eight-hour work days as long and complained that sometimes he had to work through lunch due to his inability to collect materials and complete tasks on time. (AR 203.) It was during this time that Plaintiff sought treatment from a psychiatrist. (AR 203.) Plaintiff testified that he stopped working as a nurse's assistant because he had a lot of trouble focusing, getting materials together for work, and getting to work on time and that too many

things were bothering him, which ultimately prevented him from doing his job the way he needed to in order to keep it.[1] (AR 201-02.)

Plaintiff testified that he was able to take care of his shopping needs, run errands (walking, driving, or taking public transportation), do yard work around the house, and handle household chores, such as caring for the family dog, cooking, ironing, and doing the laundry. (AR 95-99, 211-12.) He reported no problems interacting with family, friends, or members of the general public. (AR 210, 212.) He told the ALJ that he enjoys watching TV, listening to music, reading, going to the mall or the beach, and, on occasion, speaking to friends on the phone. (AR 95-99, 211-13.)

   2.   Plaintiff's Mother's Testimony

Plaintiff's mother testified that her son was unable to perform his duties as a nurse's assistant due to his bipolar condition. (AR 218.) She testified that Plaintiff was unable to focus and complete tasks. (AR 214-15.) She noted that Plaintiff experienced similar problems at home on a daily basis. (AR 220-21.) She complained that she "can't take it anymore" and hopes that her son receives the aid he needs so that he can obtain healthcare and housing. (AR 220-25.) She testified that Plaintiff did not suffer any adverse side-effects from the medication. (AR 223.) She noted that her son presents himself well at times and appears put together, but that was not an accurate picture of what she lives with on a daily basis. (AR 223.)

---

[1] Plaintiff testified that he was given warnings, written up, and ultimately fired multiple times due to his inability to focus and maintain a steady work pace, but continued obtaining jobs based on recommendations from his mother, who is a practicing nurse, and former co-workers. (AR 201-02.) It is unclear from the record whether Plaintiff was fired from his last job ending July 28, 2002, or whether he quit. (AR 201-02.)

3. <u>The ALJ's Decision</u>

The ALJ issued a decision denying Plaintiff's application for SSI on March 5, 2006. (AR 13-20.) He analyzed Plaintiff's claim under the Agency's five-step sequential evaluation process. At step one, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 1, 2002. (AR 14, 19.) At steps two and three, he found that Plaintiff's bipolar disorder was a "severe" impairment, but that it did not meet or medically equal any of the Listed impairments. (AR 19.) At step four, he found that Plaintiff could not return to his prior work as a nurse's assistant. (AR 19.) At step five, he concluded that Plaintiff had no transferable skills, but could still perform work existing in significant numbers in the economy, including work as a commercial cleaner or hand packager. (AR 18-19.) The ALJ concluded, therefore, that Plaintiff was not under a disability for purposes of the Social Security Act. (AR 20.) Plaintiff appealed the ALJ's decision to the Appeals Council, but his appeal was denied. (AR 4-7.)

## III.

## STANDARD OF REVIEW

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Indeed, if the record evidence can reasonably support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

## IV.
## ANALYSIS

Plaintiff alleges that the ALJ failed to provide legally sufficient reasons for rejecting his testimony and his mother's testimony. (Joint Stipulation ("JS") 4.) For the reasons explained below, the Court disagrees.

A. <u>The ALJ Provided Specific And Legitimate Reasons For Rejecting Plaintiff's Testimony</u>

The essence of Plaintiff's testimony was that he was too impaired to work. He complained that he could not focus and that, as a result, he lost his job as a nurse's assistant. The ALJ rejected this testimony and concluded that Plaintiff could work. Plaintiff argues that this was error in that the ALJ did not set forth sufficient

reasons for rejecting his testimony.  Plaintiff's argument is not supported by the record.

The ALJ is responsible for determining credibility. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  An ALJ may reject a claimant's testimony by specifically identifying the incredible testimony and by identifying the evidence that undermines that testimony. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The ALJ must state clear and convincing reasons for rejecting a claimant's testimony, *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), but, as long as substantial evidence in the record supports the ALJ's credibility finding, this Court may not second-guess it. *See Morgan*, 169 F.3d at 600.

The ALJ articulated several specific, clear, and convincing reasons for rejecting Plaintiff's testimony.  He noted that the medical evidence indicated that Plaintiff had very few symptoms and was responding well to his medication, and concluded that this evidence contradicted Plaintiff's allegations of disabling mental impairment. (AR 15-16.)  In doing so, he considered Plaintiff's GAF score of 65, indicating a relatively high level of functioning, as one factor.[2] (AR 16.)  These were proper considerations and were supported by substantial evidence in the record. *See Rollins v.*

---

[2] The Global Assessment of Functioning or GAF scale reports a "clinician's judgment of the individual's overall level of functioning," which is used in "planning treatment and measuring its impact, and in predicting outcome."  Diagnostic & Statistical Manual of Mental Disorders, Text Revision, 34 (4th ed. 2005).  A GAF of 65 demonstrates, "[s]ome mild symptoms (e.g., depressed mood and mild insomnia), OR some difficulty in social, occupational or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)(stating medical evidence that contradicted claimant's assertion of severity of her symptoms properly considered as a basis for finding claimant not credible). The medical evidence not only did not support Plaintiff's allegations that he was having trouble coping, it contradicted them. Plaintiff told his psychiatrist repeatedly that he was doing very well on medication and reported few to no symptoms. (AR 120, 127-130, 135-136, 140.) The ALJ rightly focused on this fact when rejecting Plaintiff's credibility.

Plaintiff's daily activities served as another reason for rejecting Plaintiff's claims. (AR 16.) Plaintiff testified that he was able to do chores around the house, such as cooking, cleaning, and gardening. (AR 95-99, 211-12.) He also reported that he was able to do errands outside the home, whether on foot, by car, or by bus. (AR 212.) He testified that he was able to interact well with people, including family, friends, and the public. (AR 210, 212.) All of these things contradicted Plaintiff's claimed disability and the ALJ rightly took them into account. *See Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996)(explaining ALJ may reject claimant's testimony of disabling level of impairment that is contradicted by daily activities, including household chores).

The ALJ noted that the medication Plaintiff was taking was controlling his condition and that there were no side-effects. (AR 16.) These were proper considerations in evaluating Plaintiff's credibility, *see Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)(finding effectiveness of medication and lack of side-effects proper considerations in credibility determination), and were supported by the record. (AR 222-23.)

In the end, the Court concludes that the ALJ set forth convincing reasons for rejecting Plaintiff's testimony and these reasons were backed by substantial evidence in this record. Because the ALJ's credibility finding was based on substantial evidence in the record, this Court is not at liberty to second-guess it. *Morgan*, 169 F.3d at 600.

B.   <u>Plaintiff's Mother's Testimony Was Properly Rejected</u>

Plaintiff's mother also testified at the administrative hearing. She explained at length why Plaintiff's psychological impairment precluded him from doing much of anything, particularly work. The ALJ rejected this testimony, too. Plaintiff argues that this was error. For the following reasons, the ALJ's finding that Plaintiff's mother's testimony should be discounted is affirmed.

Testimony from a lay witness concerning "how an impairment affects [a claimant's] ability to work" may not be ignored without explanation. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). When presented with lay witness testimony regarding a claimant's symptoms, an ALJ is obligated to give reasons germane to the witness before discounting it, and cannot dismiss the testimony solely because he has found that the claimant's testimony was not credible. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ found that Plaintiff's mother's testimony was not credible because it was inconsistent with the record as a whole, specifically the medical evidence and Plaintiff's daily activities. (AR 16.) The ALJ's rejection of the mother's testimony for these reasons was proper. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)(explaining ALJ may reject lay witness testimony if it conflicts with the medical evidence). Her testimony as to Plaintiff's daily

activities was not supported by the record. Moreover, it was inconsistent with Plaintiff's own testimony, wherein he described managing chores around the house and having the ability to take care of his own needs without assistance. (AR 206-07.)

The ALJ also noted that the mother's testimony "at best is that of a loving, caring mother, who wants her child afforded all possible opportunities." (AR 16.) This is an additional, proper reason for rejecting the mother's testimony. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006)(upholding ALJ's finding that claimant's girlfriend was not credible due to fact that her close relationship with claimant may have influenced her testimony based on her desire to help him). Plaintiff's mother's feelings of desperation when dealing with her son on a daily basis and her desire that he find independent housing, which would be facilitated by obtaining social security, were evidenced throughout her testimony. (AR 219-221, 223, 225.) For all these reasons, the ALJ's rejection of the mother's testimony will not be disturbed.

## V.

## CONCLUSION

For the reasons set forth above, this Court finds that the Agency's findings were supported by substantial evidence and were free from material legal error. Accordingly, the Court AFFIRMS the decision of the Agency.

IT IS SO ORDERED.

DATED:    March __19__, 2007

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\SMITH, T 5922\Memo_Opinion.wpd